UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 3:07-CR-44 |
| ) | |
| V. ) | (Phillips / Shirley) |
| ) | |
| SCOTT EDWARD WILLYARD, ) | |
| ) | |
| Defendant ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and by the Order [Doc. 241] of the Honorable Thomas W. Phillips, United States District Judge, for disposition or report and recommendation regarding disposition by the district court as may be appropriate. This matter is before the Court upon Defendant Scott Edward Willyard's ("Defendant Willyard") Motion to Suppress Statements [Doc. 113]. The parties appeared before the Court on April 1, 2008 for an evidentiary hearing. Assistant United States Attorney Hugh Ward ("AUSA Ward") appeared on behalf of the government. Attorney Robert Vogel ("Attorney Vogel") appeared on behalf of Defendant Willyard, who was also present. At the conclusion of the hearing, neither party requested leave to file post-hearing briefs. Accordingly, the Court took the matter under advisement on April 1, 2008, and the matter is now ripe for adjudication.

**I.    Procedural Posture**

On November 2, 2007, this Court held an evidentiary hearing on Defendant Willyard's Motion to Suppress Statements and Physical Evidence [Doc. 113]. On December 18, 2007, this

1

Court filed a twenty-eight page Report and Recommendation [Doc. 212], in which it was recommended that Defendant Willyard's Motion to Suppress Statements and Physical Evidence be denied in part, reserved in part. The Court recommended Defendant's Motion to Suppress Physical Evidence be denied since Trooper Coleman's traffic stop of Defendant's vehicle and trailer on Interstate 40 in Arkansas was supported by probable cause. The Court, however, was unable to make a recommendation to the District Court as to Defendant's Motion to Suppress Statements, finding neither party provided the Court with the pertinent information to make an informed recommendation. The Court found the government "called no ... witnesses" other than Trooper Coleman, who testified he did not read Defendant his Miranda rights upon arresting Defendant, "but merely proffered that Defendant signed two written waiver of rights forms and cooperated by making DEA directed phone calls." [Doc. 212 at 24]. The government did not offer as evidence copies of Defendant's statement, the audio tape recording of the interrogation, or the waiver of rights form. The Court also found its analysis "further hindered because Defendant has only made blanket, but unsupported, allegations that his statements were made in violation of Miranda" [Id.]. Accordingly, the Court recommended the District Court remand the matter for further hearing and recommendations, where it would be expected the government "bear the burden of establishing" Defendant provided a voluntary, knowing, and intelligent waiver of his constitutional rights.

On December 29, 2007, Defendant Willyard filed a timely objection with the District Court [Doc. 216]. On February 12, 2008, District Judge Thomas Phillips accepted this Court's findings "as to the lawfulness of the traffic stop and search of defendant's vehicles, but must refer this matter to Judge Shirley to conduct an evidentiary hearing on defendant's motion to suppress statements." [Doc. 241 at 1]. Acknowledging:

> [s]ubsequent to the hearing, the government filed the following documents: (1) Arkansas State Police Miranda rights form regarding defendant; (2) Lonoke County Sheriff's Department Statement of Rights form dated January 27, 2006; (3) U.S. Department of Justice Drug Enforcement Administration Consent to Search form dated January 27, 2006; and (4) DEA Form-6, Report of Investigation, dated February 21, 2006 regarding the statement of defendant[,]

Judge Phillips also gave credence Defendant's argument that "there has been no supporting testimony offered to corroborate the authenticity or accuracy of the documents offered by the government" nor did "[d]efense counsel ... have the opportunity to cross examine any witnesses concerning these documents and the circumstances surrounding their creation have not been established" [Id. at 4-5]. Accordingly, Judge Phillips agreed with this Court that the record did not contain sufficient information to determine whether Defendant was advised of his Miranda rights and if he waived those rights voluntary, knowingly, and intelligently. Thus, the District Court referred this matter back to the undersigned to conduct an evidentiary hearing on Defendant's motion to exclude statements.

Defense counsel advised the Court that his client wished to be present at any evidentiary hearings held in this matter. Therefore, he requested the hearing be scheduled once his client returned from undergoing medical evaluation at the United States Medical Center for Federal Prisoners in Springfield, Missouri. Defendant Willyard returned to the Eastern District of Tennessee on Monday, March 31, 2008. Accordingly, the Court held an evidentiary hearing and heard testimony on the pending motion on April 1, 2008. Relevant to the issue of whether Defendant was given his Miranda rights prior to any custodial interrogation and whether he waived those rights voluntarily, knowingly, and intelligently, the government presented testimony from the following witnesses: Lieutenant James Kulesa from the Lonoke County Sheriff's Office; Special Agent

3

Kimball Hardeman from the Drug Enforcement Agency, Little Rock District Office; and Special Agent David Younce, also from the Drug Enforcement Agency, Little Rock District Office.

I.     **Suppression Hearing Testimony**[1]

   A.     *Lieutenant James Kulesa*

The government called James Kulesa ("Kulesa"), a lieutenant with the Lonoke County Sheriff's Office, located in Lonoke County, Arkansas. Kulesa works in the Narcotics Division in the Sheriff's Office; he testified he was on duty on January 27, 2006 and encountered Defendant Willyard on that date. Kulesa stated he assisted the Arkansas State Troopers with Defendant's traffic stop. He was not at the scene of the stop on Interstate 40, but instead met Defendant for the first time at the police station. While Defendant was being interviewed by the DEA, he took photographs of the vehicle, trailer, and the marijuana in the trailer.

Kulesa stated he interviewed Defendant at 5:13 p.m. and advised him of his constitutional rights prior to questioning him. He identified Exhibit 18 as the Statement of Rights form Defendant signed. The form includes a series of questions which if Defendant understood, he was to write "yes" and then initial. Kulesa stated he read each statement to Defendant, Defendant answered "yes" for each statement, and placed his initials "SEW" after each yes designation.[2]  [See id.].

---

[1] In addition to the testimony heard at the April 1, 2008 evidentiary hearing, this Court incorporates previously heard testimony given by Trooper Coleman at the November 2, 2007 evidentiary hearing which also pertains to the January 27, 2006 traffic stop of Defendant Willyard's vehicle and trailer. [See Doc. 212].

[2] The Statement of Rights form contained the following statements: "You have the right to remain silent. Anything you say can be used against you in Court, or other proceedings. You have the right to consult an attorney before making any statement for any question, and you may have him present with you during questioning. You may have an attorney appointed by the Court to

Kulesa stated Defendant Willyard never asked for an attorney. The advising of rights and subsequent interview was originally tape recorded and then transferred to CD [Ex. 23]. Kulesa stated any portions of the conversation between he and Defendant which were not recorded were about non-germane subjects. The interview was conducted in Kulesa's office. The recording of the interview was played for the Court and reflected Kulesa's testimony that Defendant answered "yes" when asked if he understood his rights, that he was cooperating under his free will, and was not coerced to cooperate and/or participate in the interview.

Kulesa then described what Defendant told him during the interview. Kulesa was told that Defendant was stopped on Interstate 40 while he was pulling a trailer. Defendant was driving from Tucson, Arizona and was en route to Tennessee. Defendant told Kulesa he had an "idea what was in" the trailer and that he was "delivering it to someone in Tennessee." Defendant further told Kulesa that he was coerced into driving the marijuana to Tennessee because his daughter was threatened and he was worried about her safety.

Kulesa indicated that once the interview was completed, Defendant Willyard was taken to detention. Kulesa saw Defendant a few months later at Perry's Motel. Defendant was there with an antique car and Kulesa stated they recognized each other and spoke briefly.

On cross-examination, Kulesa indicated Defendant was arrested at 11:00 a.m. on January 27, 2006 and that he first interviewed Defendant at 5:13 p.m. He stated Defendant first spoke to Drug Enforcement Agency ("DEA") Special Agents while he took photographs of Defendant's vehicle,

---

represent you, if you cannot afford or otherwise obtain one. This attorney will be free of charge. If you decide to answer to questions now, with or without a lawyer, you still have the right to stop the questioning for the purpose of consulting a lawyer. However, you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer, if you so desire."

trailer, and the marijuana. Kulesa informed the Court that under normal sheriff's office procedure, he does not interview arrested individuals if the DEA is involved, unless the person arrested requests to talk to a member of local law enforcement. Defendant indicated he wanted to talk with local law enforcement because he was worried about his daughter's safety in light of his arrest. Kulesa stated he did not know if Trooper Coleman read Defendant his Miranda rights upon arrest or if the DEA agents read Defendant his Miranda rights prior to their interviewing him. When asked whether Defendant named any names during the interview in regard to delivering the drugs, Kulesa responded that he would have to listen to the interview tape to be able to answer that question; he could not remember that detail without refreshing his memory.

### B. *Special Agent W. Kimball Hardeman*

The government next called Special Agent Kimball Hardeman ("SA Hardeman") of the DEA. SA Hardeman is a special agent in the DEA Little Rock District Office, which is located within fifteen miles of Lonoke, Arkansas. SA Hardeman was on duty on January 27, 2006, along with SA David Younce, and first met Defendant Willyard at the Lonoke County Jail. SA Hardeman stated Defendant Willyard asked to speak with them and that he advised Defendant of his constitutional rights. AUSA Ward then showed SA Hardeman Exhibit 16, which SA Hardeman acknowledged was the Miranda Rights Form he had Defendant fill out prior to questioning him [See Ex. 16]. The form was signed by Defendant at 1:34 p.m., indicating the time the interview began. The form includes a series of questions which if Defendant understood, he was to write "yes" and then initial.[3] SA Hardeman stated each statement was read to Defendant, Defendant answered "yes"

---

[3]The Miranda Rights Form included the following questions: "Do you understand that you have the right to remain silent? Do you understand that anything you can say and will be used against you in court? Do you understand that you have the right to talk to a lawyer for advice before we

6

for each statement, and placed his initials "SEW" next to each question, acknowledging his "yes" designation. [See id.]. SA Hardeman stated Defendant Willyard never asked for an attorney to be present during the interview.

SA Hardeman explained what he was told during their interview with Defendant. He stated that Defendant told them he was traveling from Arizona and he was carrying marijuana in his trailer. Defendant Willyard mentioned the name "Robert Haskins" during the interview as being connected to the marijuana he was carrying. SA Hardeman asked Defendant if he would be willing to place a phone call to Mr. Haskins. Defendant agreed and attempted to reach Mr. Haskins on the phone, but was unable to. Defendant only reached Mr. Haskins's voice mail. SA Hardeman stated Defendant received an incoming phone call at the end of the interview and Defendant advised him it was Mr. Haskins, but SA Hardeman never confirmed who the phone call was from. SA Hardeman further testified Defendant provided consent to have his Cosby, Tennessee residence searched and authenticated Exhibit 17, the Consent to Search form filled out and signed by Defendant. SA Hardeman stated he did not recall what, if anything, was found at Defendant's residence.

On cross-examination, SA Hardeman stated he did not recall any conversation with Defendant prior to reading him his Miranda rights. He also stated he was unsure whether Defendant was given his Miranda rights at any time prior to 1:34 p.m. SA Hardeman was only able to testify that he gave Defendant his rights at 1:34 p.m. SA Hardeman further testified when Defendant Willyard started talking to them about the marijuana, he stated he was delivering the marijuana to

---

ask you any questions and to have him with you during questioning? Do you understand that if you cannot afford a lawyer, one will be appointed for you before any questioning if you wish, at no cost to you? Do you understand that if you decided to answer questions now without a lawyer present, you will still have the right to stop answering at any time? You also have the right to stop answering at any time until you talk to an attorney?"

Tennessee, specifically 110 Greasy Cove Road, Cosby, Tennessee, his residence, and was leaving it there for an unknown subject to pick up. Defendant Willyard also stated that Mr. Haskins, who had threatened Defendant, was going to arrange to have the marijuana picked up or was going to pick it up himself. SA Hardeman stated he found Defendant's statements during the interview inconsistent.

### C. *Special Agent David Younce*

The government also called Special Agent David Younce ("SA Younce") with the DEA, Little Rock District Office. SA Younce testified he also was on duty on January 27, 2006 and was present during Defendant's interview. SA Younce corroborated SA Hardeman's testimony regarding the reading and signing of the Miranda Rights Form. He stated Defendant signed and initialed the form and never asked for an attorney to be present during the interview. SA Younce testified Defendant Willyard said he "wanted to assist with the investigation." Defendant's statement advised SA Younce that the marijuana in his trailer was to be delivered to Defendant's residence at 110 Greasy Cove Road, Cosby, Tennessee. Defendant Willyard also stated the marijuana belonged to Robert Haskins and offered to help locate Mr. Haskins. SA Younce also stated that after the interview, Defendant Willyard retained a lawyer, who provided the authorities with photographs of Mr. Haskins. During the interview, Defendant Willyard also stated he only agreed to drive the marijuana from Tucson because he was coerced and tortured in the desert; however, SA Younce testified he did not believe these allegations. SA Younce also testified when Defendant Willyard was arrested, he was in possession of two cellular phones with the phone numbers 931-238-5683 and 913-626-8229.

On cross-examination, SA Younce stated he was certain Defendant understood his

8

constitutional rights, but he had no knowledge whether Defendant was read his Miranda rights prior to the DEA agents reading the rights at 1:34 p.m. He further stated Defendant's attorney from Jacksonville, Arkansas told him that Defendant wanted to cooperate in the case against Mr. Haskins, which was the basis for handing over the photographs of Mr. Haskins. SA Younce then stated he sent the information regarding Mr. Haskins to Tucson; the authorities did not try to locate Mr. Haskins in the Eastern District of Tennessee.

### III. Findings of Fact[4]

This Court finds on January 27, 2006 at 10:33 a.m, Defendant Willyard was pulled over pursuant to a routine traffic stop on Interstate 40 in Lonoke County, Arkansas. After Trooper Coleman's K-9, Scarlet, alerted on Defendant's vehicle and trailer, Trooper Coleman ordered Defendant to open up the back of the trailer so he could search it for drugs. At this time, Defendant was already outside his vehicle. At 10:44 a.m., Defendant Willyard was placed in handcuffs and told by Trooper Coleman to sit in the grass on the side of the road. When Trooper Coleman opened the trailer and found the marijuana, he placed Defendant in the back of his police cruiser. At 10:48 a.m., an officer who arrived at the scene of the traffic stop to assist Trooper Coleman advised Trooper Coleman to give Defendant Willyard his Miranda warnings. However, Trooper Coleman never read Defendant Willyard his Miranda rights. Defendant was brought to the Lonoke County Sheriff's Office around 11:00 a.m. Upon arriving, Defendant asked to speak with law enforcement

---

[4]The Court incorporates by reference all previous findings of fact made in conjunction with the January 27, 2006 traffic stop of Defendant Willyard's vehicle and trailer. Accordingly, all factual findings from this Court's December 18, 2008 Report and Recommendation regarding Defendant's interaction with Trooper Coleman on Interstate 40 are incorporated into this Report and Recommendation. [See Doc. 212].

9

officials. He first met with DEA Special Agents Hardeman and Younce. While Defendant was being interviewed by SA Hardeman and SA Younce, Lieutenant Kulesa took photographs of Defendant's vehicle, trailer, and the marijuana in the trailer.

SA Hardeman and Younce are based out of the DEA Little Rock District Office. They were on duty on January 27, 2006 and interviewed Defendant subsequent to his arrest. The interview started at 1:34 p.m., the same time Defendant executed his <u>Miranda</u> Rights Form, which was also signed by the two interviewing agents. This form was executed prior to any questioning of Defendant by the agents. This was the first time Defendant received his <u>Miranda</u> rights in connection with the earlier traffic stop. SA Hardeman read to form aloud to Defendant. Defendant was advised of his constitutional rights, which advised him that he had the right to remain silent; anything he said could and would be used against him in court; had the right to talk to a lawyer prior to talking to law enforcement and could have a lawyer present during the interrogation; could have a lawyer appointed if he could not afford one; and could stop the interrogation at any time. Defendant answered each question in the affirmative and initialed "SEW" next to each question as well. Defendant never asked for an attorney nor did he ever ask to stop the interview. Defendant told the agents he wished to "assist with the investigation."

The Court further finds Defendant Willyard told SA Hardeman and SA Younce he was traveling from Arizona and transporting marijuana to his residence in Cosby, Tennessee for pickup by an unknown subject. Defendant brought up the name Robert Haskins as being connected to the marijuana he was transporting, and at the direction of DEA agents, attempted to contact Mr. Haskins on the telephone. Defendant was unable to reach Mr. Haskins personally and only able to reach his voice mail. Defendant also signed a Consent to Search form, which provided permission for the

authorities to search his residence at 110 Greasy Cove Road, Cosby, Tennessee. When Defendant Willyard was arrested, he had in his possession two cellular phones with phone numbers 913-238-5683 and 913-626-8229. Defendant later retained a lawyer who provided photographs of Mr. Haskins to the DEA in an effort to cooperate with the authorities.

Later that afternoon, at 5:13 p.m., Defendant was interviewed by Lieutenant Kulesa of the Lonoke County Sheriff's Office at the police station. Under standard operating procedures, Kulesa only interviewed Defendant because Defendant stated he wanted to speak with someone from the local police department in addition to talking with the DEA. Kulesa was told by Defendant that he was worried about his daughter's safety since he was arrested and the marijuana he was carrying was seized. Kulesa advised Defendant of his constitutional rights. Defendant signed a second statement of rights form by answering "yes" to the list of questions regarding his rights and initialed each "yes" designation with "SEW". During the interview with Kulesa, Defendant never requested an attorney be present.

During the interview, Defendant told Kulesa that he was stopped while driving on Interstate 40; he was driving from Arizona to Tennessee. Defendant told Kulesa he was pulling a trailer and also said during the interview he had an "idea what was in" the trailer and he was delivering it to someone in Tennessee.

## IV. Position of the Parties

In his original motion, Defendant Willyard moved to suppress any and all statements allegedly made to law enforcement officers during custodial interrogation on January 27, 2006 [See Doc. 113]. At the conclusion of the evidentiary hearing, defense counsel, on behalf of his client,

11

conceded the government established by a preponderance of the evidence through the proffered testimony and Exhibits 16-18,[5] that Defendant voluntarily waived his Miranda rights when interviewed by DEA Special Agents Hardeman and Younce at 1:34 p.m. and Lieutenant Kulesa at 5:13 p.m. at the Lonoke County Sheriff's Office. However, Defendant contends since he was not advised of his Miranda rights until 1:34 p.m., any statements from the time he was pulled over by Trooper Coleman to when he was given his rights should be suppressed.

The government, in response, argues when Defendant's vehicle was stopped on January 27, 2006, Trooper Coleman conducted a valid traffic stop resulting from his observing Defendant committing a moving violation on Interstate 40 [Doc. 145]. The government further argues that Trooper Coleman, the Arkansas State Trooper who conducted the stop, then observed the Defendant acting in a way, based on his training and experience, which alerted him to the possibility of, among other things, Defendant driving under the influence, thus escalating his suspicion that further investigation of Defendant and his vehicle and trailer were justified.

**V. Analysis**

Defendant Willyard objects to the admissibility of any statements made from the time Trooper Coleman pulled him over at 10:33 a.m. on January 27, 2006 to the time when he was given his Miranda rights at 1:34 p.m. Defendant argues that any statements made to any law enforcement officers during this time were obtained in violation of his Fifth Amendment rights and should be

---

[5]Exhibit 16 is the Miranda Rights Form signed at 1:34 p.m. on January 27, 2006 by Defendant Willyard, SA Younce, and SA Hardeman; Exhibit 17 is the Consent to Search form signed on January 27, 2006 by Defendant Willyard, giving the DEA to search his residence at 110 Greasy Cove Road, Cosby, TN; Exhibit 18 is the Statement of Rights form signed at 5:13 p.m. on January 27, 2006 by Defendant Willyard and Lieutenant Kulesa.

excluded based on Miranda v. Arizona, 384 U.S. 436 (1966). Defendant concedes any statements made during interrogation after 1:34 p.m. were taken in compliance with the spirit of Miranda, and accordingly, does not challenge their admissibility.

Miranda holds that statements made by a defendant during custodial interrogation generally may not be used as evidence at trial, unless prior to the time the statement was made, the defendant was given certain warnings concerning his rights[6], and thereafter, the defendant waived those rights. 384 U.S. at 443. The Supreme Court has defined "interrogation" as "any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Volunteered statements, however, are not barred by the Fifth Amendment and their admissibility is not affected by Miranda, 384 U.S. at 477-79; see also United States v. Clark, 982 F.2d 965, 967-68 (6th Cir. 1992) (voluntary statements admissible even where no Miranda warnings given).

This Court previously held Trooper Coleman's questioning Defendant during the traffic stop was proper and reasonable under the Fourth Amendment [See Doc. 212 at 18-22]. Citing Ohio v. Robinette, 519 U.S. 33 (1996), United States v. Burton, 334 F.3d 514, 518 (6th Cir. 2003), and United States v. Erwin, 155 F.3d 818, 822-23 (6th Cir. 1998) the Court determined Trooper Coleman's initial questions prior to arrest regarding Defendant's travel agenda and what he was hauling in the trailer were reasonable "under the particular facts of the case."

"Any interview of one suspected of a crime by a police officer will have coercive aspects to

---

[6] A defendant must be told that he has "the right to remain silent, that anything he says can be used against him a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479.

13

it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." United States v. Kelly, 991 F.2d 1308, 1312 (7th Cir. 1993) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

> An officer's obligation to administer Miranda warnings attaches, however, only where there has been such a restriction on a person's freedom as to render him 'in custody.' In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. .. [T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.

Stansbury v. California, 511 U.S. 318, 322-23 (1994) (internal quotations and citations omitted); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir.) cert. denied, 523 U.S. 1122 (1998). Whether one is "in custody" for purposes of Miranda hinges on "how a reasonable man in the suspect's position would have understood his situation." United States v. Mahan, 190 F.3d 416, 421 (6th Cir. 1999) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). In Berkemer, the Supreme Court held that one is not "in custody" for purposes of Miranda during roadside questioning by a police officer during a routine traffic stop, likening such encounters to Terry stops.[7] Berkemer, 468 U.S. at 437-39; see also United States v. Ozuna, 170 F.3d 654, 658 n.3 (6th Cir. 1999). Therefore, in the instant case, Trooper Coleman was not required to advise Defendant Willyard of his constitutional rights prior to asking questions during the routine traffic stop on Interstate 40 as Defendant was not, at that point, in custody for purposes of Miranda. Accordingly, any statements made by Defendant in response to Trooper Coleman's questioning during the initial

---

[7] See Terry v. Ohio, 392 U.S. 1 (1968).

traffic stop are not subject to suppression.

After Scarlet alerted on Defendant's vehicle and trailer, Trooper Coleman ordered Defendant to open up the back of the trailer so he could search it. At 10:44 a.m., Defendant Willyard was placed in handcuffs and told by Trooper Coleman to sit in the grass on the side of the road. [Ex. 1]. When Trooper Coleman opened the trailer and found the marijuana, he placed Defendant in the back of his police cruiser. [Ex. 1 at 10:47 a.m.]. At 10:48 a.m., an officer who arrived at the scene of the traffic stop to assist Trooper Coleman, but whose identity was never revealed to the Court, advised Trooper Coleman to give Defendant Willyard his Miranda warnings. [Ex. 1]. However, the videotape of Defendant's arrest does not show Defendant received his Miranda rights; furthermore, Trooper Coleman testified he did not read Defendant Willyard his Miranda rights upon his arrest. See United States v. Saenz, no, 99-20276, 2000 WL 33725117, at * 9 (W.D. Tenn. Mar. 22, 2000) (finding it "clear that [defendant] was given the Miranda warnings both on the scene of the traffic stop ... . According to the videotape of the traffic stop, upon his arrest immediately after the drugs were found ... and prior to questioning, Officer Tate administered the Miranda warnings to the defendant."). Accordingly, this Court finds any statements made after 10:44 a.m. when Defendant was placed in handcuffs and prior to his receiving his Miranda rights at 1:34 p.m. at the Lonoke County Sheriff's Office, are subject to suppression. However, the Court finds no evidence in the record Defendant made any incriminating statements during this time, nor does the government argue if any statements were made, they were made voluntarily, which would put them outside the realm of Miranda. See United States v. Jones, 128 Fed. Appx. 490, 494 (6th Cir. Apr. 19, 2005) (holding defendant's response "you're going to find bad pictures on my computer" and "you're not going to find bad pictures of children" was voluntary in response to the police stating they wanted

to talk to him about a complaint involving the transmission of sexually explicit images). However, out of an abundance of caution to protect Defendant's Fifth Amendment rights this Court finds since Defendant did not receive his Miranda warnings upon his arrest, any statements made during the time period between his arrest by Trooper Coleman at 10:44 a.m. and his waiving his Miranda at the Lonoke County Sheriff's Office at 1:34 p.m., are subject to suppression. The Court finds this abundance of caution necessary in light of Trooper Coleman's testimony that he did not remember whether he asked Defendant anymore questions after he placed him under arrest, yet review of the recording of the arrest shows Trooper Coleman asked Defendant Willyard at 10:50 a.m. if he wanted to make a statement and continued to tell Defendant he could help himself by making a statement.

## VI. Conclusion

For the reasons set forth herein, it is **RECOMMENDED** that Defendant Willyard's Motion to Suppress Statements **[Doc. 113]** be **GRANTED IN PART**. The Court **RECOMMENDS** any statements made between Defendant's arrest on Interstate 40 at 10:44 a.m. and his waiver of his Miranda rights at 1:34 p.m. on January 27, 2006 at the Lonoke County Sheriff's Office should be suppressed since Defendant Willyard was not advised of his Miranda rights as required by the Fifth Amendment.[8]

    s/ C. Clifford Shirley, Jr.
    United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).