UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SCOTT EDWARD WILLYARD, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No.   3:07-CR-44-TWP-CCS-8 |
| ) |        3:16-CV-610-TWP |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter is before the Court on the "Motion to Vacate under 28 U.S.C. 2255" [Doc. 521],[1] filed by Scott Edward Willyard ("Petitioner"). On November 18, 2016, the United States responded in opposition [Doc. 523]. For the reasons which follow, the Court finds Petitioner's §2255 motion meritless and it will likewise be **DENIED** and **DISMISSED with prejudice**.

I.   **PROCEDURAL HISTORY**

In 2007, Willyard and ten co-defendants were charged in a second superseding indictment with conspiracy to distribute 1000 or more kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a) and 846; and money laundering, in violation of 18 U.S.C. § 1956(h). The central figures in the conspiracy, Phillip Apodaca and James Michael West, were charged separately and entered guilty pleas, as did most of Willyard's co-defendants. Willyard proceeded to trial, and the jury found him guilty of conspiracy to distribute more than 100 but less than 1000 kilograms of marijuana and not guilty of money laundering.

---

[1] All references are to docket entries in case No. 3:07-CR-44 unless otherwise indicated.

For sentencing purposes, the presentence report attributed 1,814.4 kilograms of marijuana to Willyard. That corresponded to a base offense level of thirty-two, applicable to offenses involving between 1000 and 3000 kilograms of marijuana. *See* USSG § 2D1.1(c)(4) (2008). There were no adjustments to Willyard's base offense level, resulting in a guideline range of 188 to 235 months of imprisonment. Willyard objected to the drug quantity determination on the grounds that it exceeded the jury verdict of less than 1000 kilograms and was not supported by the evidence presented at trial. The district court continued the sentencing hearing in order to prepare the trial transcripts, after which it concluded that the drug quantity set forth in the presentence report was supported by a preponderance of the evidence and that Willyard's base offense level and guideline range were correctly calculated. The district court imposed a sentence of 180 months of imprisonment, to be followed by eight years of supervised release.

The Sixth Circuit affirmed Petitioner's conviction and sentence on direct appeal [Doc. 515]. Petitioner has now filed a timely § 2255 motion [Doc. 521].

**I.     STANDARD OF LAW**

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was impose in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under 28 U.S.C. § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir.1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A petitioner must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F.Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## II. ANALYSIS

Petitioner alleges that his counsel was ineffective by not arguing, either at sentencing or on appeal, that it violated Petitioner's Sixth Amendment rights for this Court "to make a drug quantity finding in excess of that found by the jury in its special verdict." [Doc. 521 p. 4]. This argument is foreclosed by the Sixth Circuit's decision affirming Petitioner's conviction.

On appeal, the Sixth Circuit found as follows:

> We will uphold a district court's determination of the drug quantity attributable to a defendant for sentencing purposes unless it is clearly erroneous. *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013). "A drug quantity need only be established by a preponderance of the evidence, and an estimate will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008); *see Johnson*, 732 F.3d at 581. When determining a defendant's base offense level based on drug quantity, the district court considers the defendant's relevant conduct, *see* USSG § 1B1.3, which may include uncharged or acquitted conduct. *See United States v. Young*, 553 F.3d 1035, 1050-51 (6th Cir. 2009); *United States v. Gill*, 348 F.3d 147, 151 (6th Cir. 2003). Relevant conduct includes all conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2).
>
> The district court did not clearly err in holding Willyard responsible for at least 1000 kilograms of marijuana—the threshold quantity to trigger a base offense level of thirty-two. Rather, this was a conservative estimate of the amount of marijuana attributable to Willyard based on his involvement in the charged conspiracy—the deliveries to West—as well as the other deliveries he made for Apodaca during the same time period, which, even if outside the scope of the charged conspiracy, were part of the same course of conduct and therefore were properly considered relevant conduct for purposes of determining drug quantity. *See id.*; *Gill*, 348 F.3d at 155. Based solely on the most conservative estimates provided by coconspirator Luke McLaughlin, Willyard delivered more than 5000 pounds of marijuana for Apodaca in 2005, with at least 1300 pounds of that marijuana going to West, in addition to 400 pounds of marijuana seized from Willyard's trailer when he was arrested in January 2006, which was intended for West. McLaughlin's testimony was corroborated by Apodaca, who testified that Willyard worked as a courier for him during this time period and made between four and six deliveries of 400 to 500 pounds of marijuana to West, as well as by testimony from West and other coconspirators and by other evidence.
>
> Willyard argues that he should have been held responsible for no more than 2000 pounds of marijuana, which is consistent with the jury's verdict and is the highest

estimate supported by the record as having been delivered to West, and that any additional marijuana attributed to him should have been excluded because it was distributed outside the charged conspiracy. But whether or not these additional marijuana deliveries were part of the charged conspiracy, they were properly considered as relevant conduct for sentencing purposes. *See Gill*, 348 F.3d at 152 ("[R]elevant conduct includes 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" (quoting U.S.S.G. § 1B1.3(a)(2))); *United States v. Easley*, 306 F. App'x 993, 995 (6th Cir. 2009). These deliveries—which occurred during the same time period, involved the same parties, and included marijuana that was often delivered from the same load—were part of the same course of conduct as the charged conspiracy. *See, e.g.*, *Gill*, 348 F.3d at 155 (holding that the district court properly considered the defendant's separate, uncharged incidents of drug distribution that occurred within the same time period as the charged offense).

[Doc. 515 p. 2-3].

As the Sixth Circuit has already found Petitioner's claim "unavailing" noting that courts can make drug quantity findings that differ from jury verdicts as long as those findings are supposed by a preponderance of the evidence, Petitioner can show no prejudice from counsel's failure to object to his sentencing on those grounds. A § 2255 motion cannot be used to relitigate issues that were denied on direct appeal absent a showing of highly exceptional circumstances, or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Such circumstances are not present here.

Thus, because Petitioner cannot establish prejudice from counsel's failure to make a meritless objection, he is not entitled to relief on this ineffective assistance claim. *See Ludwig v United States*, 162 F.3d 456, 459 (6th Cir. 1998) (counsel is not ineffective for not pursuing meritless claims).

### III. CONCLUSION

For the reasons set forth herein, Petitioner's § 2255 motion [Doc. 521] will be **DENIED**.

**IV.    CERTIFICATE OF APPEALABILITY**

Finally, the Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c)(1), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a claim has been dismissed on the merits, a petitioner must show that reasonable jurists would find the assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right, as jurists of reason would not debate the Court's findings as to any of Petitioner's claim. Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA **SHALL NOT ISSUE**.

The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

ENTER.

                                              _s/ Thomas W. Phillips_____
                                              Senior United States District Judge